Fuld, J.
In March of 1955, James Maratta entered into an employment agreement with Exercycle Corporation. It provided that ‘ ‘ Exercycle employs Maratta as its Vice-President in charge of sales ” and that he hereby “ shall have general charge and supervision of the selling activities for Exercycle.” And, the agreement went on to recite, ‘1 Maratta accepts the employment and agrees to devote his best efforts and full time to Exercycle’s sales activities ”. The employment was to continue “ until he voluntarily leaves the employ of Exercycle or dies ”, with Exercycle retaining the right to terminate the contract, if sales fell below specified levels. The agreement further stated that
“ Any dispute arising out of or in connection with this agreement shall be settled by arbitration in accordance "with the rules of the American Arbitration Association.”
Prior to entering into his agreement with Exercycle, Maratta had been associated with several large and successful enterprises and thereafter became an independent direct sales consultant. In early 1955, he was approached by the then president and controlling stockholder of Exercycle and asked to join that company as a direct sales specialist in improving its business and sales which were then at a low ebb. After a period of negotiation and study, Maratta agreed to give up his work as an independent consultant and, in the words of the contract, “ to devote his best efforts and full time to Exercycle’s sales activities ”. He was fearful, however, that, once he had developed Exercycle’s sales to the point where his compensation, based on commissions, was substantial, a new management might attempt to deprive him of the fruits of his efforts. For this *333 reason, he insisted upon and was given a life employment contract.
Maratta worked for the corporation for some four years and, apparently, the fact that he devoted all of his time, his efforts and his imagination to the enterprise, revitalized the company and improved its business. In 1959, differences arose between Maratta and the corporation—control of which had been acquired by a Mr. Little—and Maratta resigned as president, to which office he had succeeded, but continued in his employment under the 1955 arrangement. Some time later, Mr. Little expressed displeasure with Maratta’s contract and the latter, having come to believe that the new management was interfering with his supervision of sales, advised Mr. Little, by letter dated January 12, 1960, that he had “ started” to seek employment elsewhere. Three days later, an officer of Exercycle responded. Treating the letter as one of resignation, he expressed regret at Maratta’s “ decision to terminate [his] relationship with the Exercycle Corporation”.
Relying upon the broad arbitration provision in the contract, namely, tp arbitrate any dispute “ arising out of or in connection with ” the agreement, Maratta sought arbitration. Exercycle thereupon brought this proceeding for a stay on the ground that the alleged contract of employment “is void and unenforceable in that * * * [it] is lacking in mutuality by obligating Petitioner [Exercycle], to employ Respondent [Maratta] for a definite term i.e. for Respondent’s life and permitting Respondent to terminate his employment and said alleged contract at will ”. Exercycle also objected to the arbitration on the further ground that, irrespective of its validity, the contract “ is no longer in existence ” by reason of Maratta’s having terminated the contract and resigned as an employee.
The court at Special Term denied the motion for a stay and the Appellate Division affirmed by a three-to-two vote.. Both the majority and the minority, to support their respective conclusions, proceeded to construe the contract. It was the majority’s view that the contract was one to employ the respondent for life and that the provision ‘ ‘ that the employment was to continue until the respondent1 voluntarily leaves the employ of Exercycle or dies ’ did not as a matter of law make the contract illusory or just an agreement terminable at will,” On the other *334 hand, it was the dissenters’ opinion that the contract was ££ illusory ” since the employee did not agree to work for life or for any other definite period.
We, too, agree that there should be arbitration, but we reach our conclusion by a route quite different from that taken by the courts below. In our view, the question whether the contract lacked mutuality of obligation, depending as it does primarily on a reading and construction of the agreement, and involving, as is obvious from the disagreement amongst the judges of this court and the courts below, substantial difficulties of interpretation, is to be -determined by the arbitrators, not the court. Once it be ascertained that the parties broadly agreed to arbitrate a dispute £ ‘ arising -out of or in connection with ’ ’ the agreement, it is for the arbitrators to decide what the agreement means and to enforce it according to the rules of law which they deem appropriate in the circumstances.
It has long been this State’s policy that, where parties enter into an agreement and, in one of its provisions, promise that any dispute arising out of or in connection with it shall be settled by arbitration, any controversy which arises between them and is within the compass of the provision must go to arbitration. (Civ. Prac. Act, § 1448; see, e.g., Matter of Kelley, 240 N. Y. 74, 79; Matter of Marchant v. Mead-Morrison Mfg. Co., 252 N. Y. 284, 298; Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76; Matter of Terminal Auxiliar Maritima [Winkler], 6 N Y 2d 294.) As the court wrote in Matter of Marchant (252 N. Y., at p. 298), "Parties to a contract may agree, if they will, that any and all controversies growing out of it in any way shall be submitted to arbitration. If they do, the courts of New York will give effect to their intention.”
As exceptions to this general policy, however, we have held that a court will enjoin arbitration (1) where fraud or duress, practiced against one of the parties, renders the agreement voidable (see Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76, 79, supra; ef. Matter of Behrens [Feuerring], 296 N. Y. 172, 178; Matter of Wrap-Vertiser Corp. [Plotnick], 3 N Y 2d 17; Matter of Metro Plan v. Miscione, 257 App. Div. 652, 655); (2) where there is no "bonafide dispute ” between the parties, that is, where the asserted claim is frivolous (see Alpert v. Admiration Knitwear Co., 304 N. Y. 1, 6; Matter of General Elec. *335 Co. [United Elec. Radio & Mach. Workers], 300 N. Y. 262.; Matter of International Assn. of Machinists [Cutler-Hammer], 297 N. Y. 519; Matter of Wenger & Co. v. Propper Silk Hosiery Mills, 239 N. Y. 199); (3) where the performance which is the subject of the demand for arbitration is prohibited by statute (see Matter of Kramer & Uchitelle [Eddington Fabrics Corp.], 288 N. Y. 467); or (4) where a condition precedent to arbitration under the contract or an applicable statute has not been fulfilled. (See Matter of Board of Educ. [Heckler Elec. Co.], 7 N Y 2d 476; Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76, 79, supra; Matter of Cauldwell-Wingate Co. [New York City Housing Auth.], 262 App. Div. 829, motion for leave to appeal denied 287 N. Y. 853.)
Applying these principles to the case before us, there can be no doubt that Maratta and Exercycle made a contract in which they promised each other to arbitrate any differences which might arise out of or in connection with it. In fact, the agreement, entered into in March of 1955, was continued in force, its terms and provisions complied with and carried out, until January, 1960, a period of almost five years. It may hardly be said, therefore, that the making of the present agreement is in issue under section 1450 of the Civil Practice Act.
Nor is the agreement which was entered into “void and unenforceable ” within the meaning of Matter of Kramer (288 N. Y. 467, supra), as Exercycle contends. In that case, performance of an agreement had been rendered illegal by Federal price control regulations, and we stayed arbitration of the claim, based on a failure to deliver the goods contracted for, on the ground that “ controlling public policy barred delivery” at the contract price (288 N. Y., at p. 472). The present case is patently dissimilar. In Matter of Kramer, public policy as embodied in a Federal statute forbade the performance which was the subject of dispute and that policy and statute were as binding on the arbitrators as on the courts. No statute or public policy, as reflected in a legislative act, is here involved to render the employment contract unenforcible and, absent one or the other, it has long been firmly established that arbitrators may disregard the strict and traditional rules of law. (See Fudickar v. Guardian Mut. Life Ins. Co., 62 N. Y. 392, 399-400; Sturges, Commercial Arbitration and Awards [1930], pp. 793-798.) In *336 other words, since there is no statute or public policy which prohibits the performance of a promise to employ one “ until he voluntarily [quits] or dies ”, enforcement of performance by the arbitrators in this case is not rendered unlawful or legally impermissible.
Maratta’s claim is not frivolous or insubstantial (cf., e.g., General Elec. Co. (Elec. Workers], 300 N. Y. 262, supra) and there is no suggestion of fraud (cf., e.g., Matter of Lipman (Haeuser Shellac Co.], 289 N. Y. 76, 79, supra) or an unfulfilled condition precedent to arbitration. (Cf., e.g., Matter of Board of Educ. (Heckler Elec. Co.], 7 N Y 2d 476, supra.) Under these circumstances, where there is a broad provision for arbitration, such as we have here, arbitration may be had as to all issues arising under the contract. (See Matter of Terminal Auxiliar Maritima (Winkler], 6 N Y 2d 294, 298, supra; Matter of Paloma Frocks (Shamokin Sportswear Corp.], 3 N Y 2d 572, 574; Matter of Lipman (Haeuser Shellac Co.], 289 N. Y. 76, 80, supra; Fudickar v. Guardian Mut. Life. Ins. Co., 62 N. Y. 392, 399-400, supra.)
Exereycle’s claim is that no court of law would enforce the promise which it made to employ Maratta for life. Obviously, however, once having agreed to eschew recourse to courts of law and have its disputes with Maratta settled by arbitrators, Exereycle cannot urge, in opposition to arbitration, that a court of law would not enforce the agreement. If the issue involved was solely one of construction or interpretation, it would, without a doubt, be for the arbitrators to decide. The mere fact that its determination involves a mixed question of the agreement’s meaning and of law should not lead to a different result. Whether the issue is one involving interpretation or law or fact or all three, it is for the arbitrators and, as long as they remain within their jurisdiction and do not reach an irrational result, they may fashion the law to fit the facts before them. (See Matter of National Cash Register Co. [Wilson], 8 N Y 2d 377, 383; Matter of Wenger & Co. v. Propper Silk Hosiery Mills, 239 N. Y. 199, 203, supra; Fudickar v. Guardian Mut. Life Ins. Co., 62 N. Y. 392, 399, supra.) So this court said in the Fudickar case (62 N. Y., at p. 399):
“ The arbitrator is a judge appointed by the parties; he is by their consent invested with judicial functions *337 in the particular case; he is to determine the right as between the parties in respect to the matter submitted, and all questions of fact or law upon which the right depends are * * * deemed to be referred to him for decision. The court possesses no general supervisory power over awards, and if arbitrators keep within their jurisdiction their award will not be set aside because they have erred in judgment either upon the facts or the law.”
In short, the issue before us is not whether a court of law would enforce Maratta’s claim, but rather whether, as part of their agreement, the parties mutually promised to resolve all controversies “ arising out of or in connection with ” their agreement by arbitration. If the arbitrators could rationally and legitimately make an award in favor of Maratta, a court is not justified in staying the arbitration even if the claim would not be enforcible at law. In point of fact, we have declined to ■ enjoin an arbitration even where an arbitrator has been asked to do what a court of law would clearly not do. (See Matter of Staklinski [Pyramid Elec. Co.], 6 N Y 2d 159; cf. Matter of Grayson-Robinson Stores [Iris Constr. Corp.], 8 N Y 2d 133.) To paraphrase what this court wrote in the Staklinski case (6 N Y 2d, at pp. 163-164), since the parties agreed to arbitration, it is beside the point to consider whether or not in a case such as the present a court of law would enforce the employer’s promise to employ Maratta for life.
Since Exercycle’s further claim that Maratta had resigned and thereby brought his employment to an end turns on the construction of the letter written by him and on an appraisal of his conduct, the issue of termination must also be decided by the arbitrators. (See Matter of Terminal Auxiliar Maritima [Winkler], 6 N Y 2d 294, 298, supra; Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76, supra.)
The order of the Appellate Division should be affirmed, with costs.