**NECCHI SEWING MACHINE SALES CORP., Petitioner-Appellee,**

v.

**NECCHI, S. p. A., Respondent-Appellant.**

**No. 33, Docket 30454.**

United States Court of Appeals
Second Circuit.

Argued Sept. 29, 1966.

Decided Dec. 1, 1966.

George H. Schwartz, New York City (Paul E. Gelbard, Schwartz & Frank, New York City, on the brief), for petitioner-appellee.

David A. Botwinik, New York City (Murray Mogel, Fink & Pavia, New York City, on the brief), for respondent-appellant.

Before LUMBARD, Chief Judge, and FRIENDLY and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge:

Once again a party to this multi-court, federal-state litigation between Necchi S.p.A. and Necchi Sewing Machines Sales Corp. (Sales) complains to us that arbitration of certain claims should be compelled. On July 15, 1965 we decided, 348 F.2d 693, cert. denied, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966), upon the appeal of Sales, that Necchi must arbitrate items 4 and 5 in the demand of Sales of May 22, 1964 as they were matters "arising out of or in connection with the agreement" between Sales and Necchi. Six days later, on July 21, 1965, Necchi, through its attorneys, advised Sales of the appointment of its arbitrator to determine the matters we had held to be arbitrable, and of their request that the arbitrators also determine eleven claims which were enumerated.

Seven months then passed before the Supreme Court denied certiorari; meanwhile, Sales objected to Necchi's counterclaims for arbitration. After much preliminary sparring and postponement by Judge Ryan of decision on several applications made by Necchi because the mandate was stayed by this court so that application for review could be filed in the Supreme Court, the motions were finally heard in February 1966. On March 30, Judge Ryan signed an order appointing a third arbitrator and denying Necchi's motion to compel arbitration of the items listed in its letter of July 21, 1965. From that order Necchi brings this appeal; meanwhile arbitration has been stayed.

Judge Ryan held that our decision of July 15, 1965 limited the arbitration to the matters we then passed upon, that Necchi was guilty of laches in not making its counterdemand until after our decision, that Necchi, by its conduct, had waived whatever right it may have had to arbitration of its counterdemand, and that the items in Necchi's counterdemand were not arbitrable in any event.

For reasons which follow we think that all of Necchi's counterclaims should be submitted to the arbitrators.

■ We find that under the circumstances and in the absence of any guiding rules or principles of law Necchi was not guilty of laches in failing sooner to make its counterclaims and that it did not waive any rights.

Our opinion of July 15, 1965 passed only upon the demands of Sales. It was the position of Necchi that these were not arbitrable and, indeed, we found only two of the nine claims to be so. Necchi asserts that it withheld its counterdemands which it had drawn up because it believed that to assert these demands at the same time that it sought to defeat arbitration sought by Sales might constitute a waiver of its objection to arbitration. We think the record shows that this assertion is made in good faith.[1] While we are of the view that the simultaneous assertion of the counterdemands would not have had the effect feared by Necchi, we cannot say that this belief was unreasonable as there seems to be no authority on this point—at least none until this decision.

■■ The protracted bickering and the delays which have postponed all attempts to reach any decision on the merits of the respective claims emphasize that the parties should be required to act in such a manner that will prevent such time-wasting in future arbitration litigation. We think the parties objecting to arbitration should couple their objections with all available counterdemands which they may wish to have arbitrated or determined if the court should overrule their objections to arbitration. Of course they should make clear that by serving such cross-demands they do not consent to arbitration but they make the demands in order that the court may at the same time pass upon all questions possibly relevant to its decision. Hereafter, if a party resisting arbitration should fail to serve its counterclaims at the same time, its failure to do so should bar it from asking arbitration of its counterclaims if its objections are overruled.

It is true that two and one-half years have already elapsed since Sales served its demand on May 22, 1964. But most of this delay is attributable to the time such litigation takes, and the fact that neither this court nor the district court passed upon the matters with dispatch. While the appellant is not entirely blameless we cannot charge it with a major share of this delay. Moreover, appellant acted promptly in serving its counterdemand within six days of the filing of our opinion.

We also find that Necchi's conduct, apart from good faith opposition to Sales' demands, was not inconsistent with a desire to arbitrate any or all claims within the purview of the arbitration agreement, and therefore, that it should not be held to have waived its right to assert these claims.

Lastly, in footnote 2 of his opinion, Judge Ryan expressed the view that

"In any event, it does not appear that the issues now raised by respondent would pass the test of arbitrability set by the Court of Appeals. Items 1 and 2 relate to unfair competition; 3 and 5 are mutually exclusive, inconsist-

---

1. As early as June 30, 1964, Necchi submitted to the district court, and served upon Sales, an affidavit by Mr. Botwinik, Necchi's counsel, stating that it had not appointed an arbitrator for fear that "such an appointment might serve as a waiver of its serious objections" to arbitrability of Sales' items. Annexed to the affidavit was a letter appointing Lloyd I. Isler as arbitrator for Necchi and including a proposed counterdemand (9 items) in the event of arbitration. Instructions were given not to tender the letter formally, but rather to wait and "deliver the letter to petitioner as soon as the validity of respondent's objections have [sic] been determined." This proposed counterdemand appeared in the original record (pp. 75–76) and in Sales' appendix on appeal in the prior action.

These 9 items are in substance the same claims now asserted, along with new items 7 and 8 which are asserted to meet the contentions raised in Sales' two arbitrable demands.

ent with each other and with all prior statements of respondent that petitioner continued as a distributor until the end of 1963; they are sham issues; 4 goes out with 3 and 5; 6 is but a conclusion unsupported by any arbitrable issue; 7 and 8 are part of Petitioner's item 4 directed to be arbitrated; 9 has nothing to do with the contract and related to 1 and 2; 10 and 11 are also without the contract."

We do not agree.[2]

■ On the basis of federal law, which has been consistently applied by this and the district court throughout the lengthy litigation between these parties,[3] we find that items 1 through 10 arise out of the contract between the parties, and that they, along with item 11 which asks that Sales pay the arbitration costs, are arbitrable. In the first place, Sales should have been estopped from asserting that the court below could find items 1 and 2 to be non-arbitrable, as such a claim is inconsistent with a state court ruling which it sought, Docket No. 144, N. Y. Supreme Court, Special Term, N. Y. County, April 29, 1964 affirmed on re-argument, July 28, 1964, affirmed on appeal, 23 A.D.2d 632, 257 N.Y.S.2d 903 (1st Dep't 1965), see, e. g., Roth v. McAllister Bros., 316 F.2d 143 (2 Cir. 1963).

The arbitration should proceed promptly.[4] It is time for all parties concerned to cease their extravagant and involved moves and counter-moves in state and federal courts and proceed to the determination of the merits of their dispute. Our mandate will issue to the district court in five days.

Reversed and remanded.

IRVING R. KAUFMAN, Circuit Judge (dissenting):

Speed is one of the great advantages of commercial arbitration. By resorting to a professional arbitrator to settle their disputes, the parties to a contract are able to avoid the delays, often measured in terms of years, due to crowded court dockets. But, if one or both of the parties to an arbitration agreement is permitted to engage in the "protracted bickering and the delays," or the "extravagant and involved moves and counter-moves in state and federal courts," such as the majority recognizes have occurred in the present case, commercial arbitration loses one of its main virtues. I find distasteful any practice which makes the Court a puppet to the tactics and manipulations of the parties.

Neither of the parties in the present controversy comes before this Court blameless. Both Necchi and Sales have

2. Items 1 and 2 charge unauthorized use of the Necchi name and trademark in violation of paragraph 2 of the agreement of July 18, 1961, 3 charges premature abandonment of sales and distributor duties in violation of 3(a) and 3(k), 4 alleges damages caused by 3, 5 charges stockpiling of inventory in excess of limits agreed upon and continuing sales of those items beyond the time permitted in violation of 3(d), 3(g), and 3(h), 6 pleads damages caused by 5, 7 counters Sales' items 4 and 5, charging violation of the inventory purchase (or sale) option agreement in paragraph 3(j), 8 pleads damages caused by 7, 9 charges involvement with other companies which attempted unauthorized use of the Necchi name and trademark in violation of paragraphs 2, 3(a) 3(g), 3(k), and 10 alleges that the total amount of damages due is no less than $1,000,000; claim 11 asks that Sales pay the cost of the arbitration.

3. Whether federal or state law should apply to determine whether the question of arbitrability is for the courts or for the arbitrator in the first instance may be more than academic in this case, compare Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) with Matter of Exercycle Corp. v. Maratta, 9 N.Y.2d 329, 214 N.Y.S. 2d 353, 174 N.E.2d 463 (1961); see generally Note, 58 Nw.U.L.Rev. 521 (1964). Sales raised this question previously in its application for certiorari which was subsequently denied, 383 U.S. 909, 86 S.Ct. 892 (1966).

4. We do not agree with the suggestion in Judge Kaufman's dissenting opinion that at this late date there may be further delay as Sales may still add to its demands. It has made its demands and they have been passed upon.

at various times engaged in what appear to me as fancy legalistic "footwork." Each is at least partially responsible for the sad fact that no arbitration has taken place in the three years since the dispute arose. And while I agree with the majority that "the arbitration should proceed promptly," [1] I do not believe that the Court's holding will further that aim.

This case is no stranger to us. When this case was first before us a year and a half ago, 348 F.2d 693 (1965), we held that the district court had erred when it ordered arbitration without first determining whether the nine claims made by Sales were arbitrable. Had we intended to leave the scope of the arbitration proceeding open, we would simply have remanded the case to the district court to rule on the propriety of the claims. And, had we acted in that manner, the district judge might then have proceeded to permit Necchi to introduce its own claims into the proceeding. But, instead, in order to "expedite this litigation," we ruled, *sua sponte,* that only two of Sales' nine claims were arbitrable. Having made this determination, we affirmed the district court's order insofar as it directed Necchi to proceed to the arbitration it has so bitterly opposed and to appoint an arbitrator.

Chief Judge Ryan, in my opinion, therefore, was quite correct when he observed that the arbitration proceeding was before him for the sole purpose of carrying out this Court's mandate, and that the scope of the proceeding had previously been determined by us. In his discretion, and as an experienced administrator and judge, he properly concluded that Necchi's motion to compel arbitration of eleven new items, should be denied.

The majority opinion, however, will have the effect of reopening this Court's prior decision and, of course, it will expand substantially the scope of the arbitration proceeding to include all of Necchi's claims. With the background of dilatoriness in this case, I fear our decision will only compound the untoward delays. What is to prevent Sales from now proposing additional items to be included in the present proceeding? And may Sales now raise as a defense to Necchi's counterclaims, some of its own claims that we earlier found to be non-arbitrable when raised affirmatively?

I would affirm Chief Judge Ryan's decision. Necchi should not be permitted at this late date to introduce new claims in *this* arbitration proceeding, because the scope of this proceeding has long since been determined. Of course, Necchi is not forever barred from raising its claims and may assert its claims in a new and separate arbitration proceeding. And, while I recognize the Utopian objective of having the parties' claims consolidated and decided in one proceeding, I believe that this advantage may vanish in cases where the litigants show a propensity not to get on with the litigation and instead put a premium on maneuvers and counter-maneuvers. If there is to be additional arbitration, it should not be at the cost of further delay of this arbitration proceeding sought by Sales—not when the race for final judgment has been run at a snail's pace. I believe Chief Judge Ryan exercised his discretion wisely and decided properly.

1. I certainly agree with the majority's pronouncement governing cases *in futuro* that a party seeking to defeat an arbitration proceeding does not waive its objections by simultaneously asserting its counterdemands. Had this procedure been followed in the present case, the piecemeal raising of claims in this litigation would have been avoided.