**HAMILTON LIFE INSURANCE COMPANY OF NEW YORK, Petitioner,**

v.

**REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Respondent.**

No. 67 Civ. 4855.

United States District Court
S. D. New York.

July 30, 1968.

On Rehearing Oct. 17, 1968.

---

Aranow, Brodsky, Bohlinger, Einhorn & Dann, New York City, for petitioner; Herbert A. Einhorn, Anthony L. Tersigni, New York City, of counsel.

Simpson Thacher & Bartlett, New York City, for respondent; Thomas G. Nash, Jr., Dallas, Tex., Carson, Messinger, Elliott, Laughlin & Ragan, Phoenix, Ariz., Robert W. Holland, Phoenix, Ariz., of counsel.

## OPINION

HERLANDS, District Judge:

Novel and important questions of federal-state relations in accommodating the Federal Arbitration Act, 9 U.S.C. § 1 et seq. with the McCarran-Ferguson Insurance Regulation Act, 15 U.S.C. § 1011 et seq. are raised by the petitioner's motion and the respondent's cross-motion.

Petitioner Hamilton Life Insurance Company of New York (Hamilton), moves for an order, pursuant to 9 U.S.C. § 4 [1] (the Federal Arbitration Act) di-

---

1. 9 U.S.C. § 4 provides:

"§ 4. Failure to arbitrate under agreement; petition to United States Court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination.

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the fail-

recting the respondent, Republic National Life Insurance Company (Republic), to proceed to arbitration. Republic has cross-moved, pursuant to Fed.R.Civ.P. 12(b), to dismiss the petition on the following three grounds: (1) that the Court lacks subject matter jurisdiction; (2) that the Court lacks in personam jurisdiction over Republic; and (3) that Hamilton has failed to join an indispensable party. As alternative relief, Republic seeks a stay of all proceedings pending the determination by the Court of Appeals for the Ninth Circuit of an appeal in a related proceeding.

On September 21, 1965, Republic and Hamilton entered into a group reinsurance agreement. This provided that Republic would reinsure a certain percentage of the risks on group life insurance policies written by Hamilton covering civil service employees in the New York City area. The group reinsurance agreement is contained in a standard form of reinsurance contract furnished by Republic. It was executed in New York City by an officer of Hamilton, who then mailed it to Republic's office in Dallas, Texas for signature. (Affidavit of Robert H. Autenreich, sworn to December 12, 1967, pp. 2–3). After the agreement was executed, additional negotiations occurred. As a result, there was a change in the first year administrative charge on ceded business. This change was made in the original reinsurance agreement, which was first initialed by an officer of Republic in Dallas, Texas and then by an officer of Hamilton in New York City, in October, 1965. (Autenreich Affidavit, p. 3 and Exhibit 1 attached thereto).

The reinsurance agreement contains the following broad arbitration clause:

"ARTICLE XII *ARBITRATION*

1. All disputes and differences between the two contracting parties upon which an amicable understanding cannot be reached are to be decided by arbitration and the arbitrators shall place a liberal construction upon this agreement free from legal technicalities, for the purpose of carrying out its evident intent.

2. The court of arbitrators, which is to be held in the city where the home office of CEDING COMPANY [Hamilton] is domiciled, shall consist of three arbitrators who must be officers of Life insurance [sic] companies familiar with the reinsurance business, other than the two parties to this agreement. One of the arbitrators is to be appointed by CEDING COMPANY [Hamilton], the second by REPUBLIC NATIONAL and the third is to be selected by these two representatives before the beginning of the arbitration. Should the two arbitrators be unable to agree upon the choice of a third, the appointment

ure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance wtih the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."

shall be left to the president of the American Life Convention.

3. The arbitrators are not bound by any rules of law. They shall decide by a majority of votes and from their written decision there can be no appeal. The cost of arbitration, including the fees of the arbitrators, shall be borne by the losing party unless the arbitrators shall decide otherwise."

Disputes having arisen between the parties, on July 27, 1967 Hamilton served a Demand For Arbitration in New York City on Republic. The Demand For Arbitration recited that Hamilton had paid various claims under group insurance contracts ceded to and accepted by Republic and that by virtue of the reinsurance agreement Republic was obligated to pay Hamilton the sum of $278,023.41. (Exhibit 1 to Affidavit of Herbert A. Einhorn, sworn to December 11, 1967).

On November 14, 1967, Hamilton served a Notice of Appointment of Arbitrator, which also demanded that Republic select an arbitrator pursuant to the terms of the reinsurance agreement. (Exhibit 2 to Einhorn Affidavit). Republic, however, has refused to proceed to arbitration. Instead, it has subjected Hamilton to a barrage of court proceedings in an effort to obtain judicial relief.

On July 14, 1967, Republic commenced an action against Hamilton based on the agreement in issue in the United States District Court for the Northern District of Texas. The action was dismissed for lack of jurisdiction on October 23, 1967. Republic appealed from this dismissal on October 30, 1967. On November 17, 1967, Republic voluntarily discontinued its appeal.

On November 3, 1967, Republic commenced a second action against Hamilton, this time in the United States District Court for the District of Arizona. Service of the summons and complaint in that action was effected on Hamilton on November 20, 1967.

On December 11, 1967, Hamilton filed in this Court a petition to compel arbitration (Hamilton's motion now before the Court), which was brought on for hearing on December 26, 1967 by a notice of motion dated December 12, 1967.

Republic did not file an answer to the petition herein or request an adjournment of the proceedings in this Court. Instead, on December 20, 1967, Republic obtained, ex parte, from the United States District Court for the District of Arizona a temporary restraining order prohibiting Hamilton from proceeding before this Court. This order was extended on December 29, 1967. On January 9, 1968, a preliminary injunction against proceeding in this Court was issued in order to afford the United State District Court for the District of Arizona an opportunity to consider the matter fully.

On January 29, 1968, the United States District Court for the District of Arizona quashed its injunction and granted Hamilton a stay of all further proceedings in Arizona pending this Court's determination of the present application for an order directing arbitration.

On February 2, 1968, Republic moved in the Arizona federal district court for a rehearing or for a stay of its order quashing the preliminary injunction against proceeding in this Court pending appeal. On February 15, 1968, the Arizona court adhered to its prior determination but directed that no proceedings take place in the Southern District of New York until February 27, 1968 in order to allow Republic to apply to the Ninth Circuit Court of Appeals for a stay.

On February 19, 1968, Republic applied ex parte to said Court of Appeals for a stay. On February 21, 1968, the Ninth Circuit stayed until March 4, 1968 the dissolution of the preliminary injunction against proceeding in the Southern District of New York to allow Hamilton to be heard on Republic's application for a stay pending appeal.

Subsequently, on March 4, 1968, the Ninth Circuit vacated its temporary stay.

On March 7, 1968, Republic applied to the United States Supreme Court for a temporary stay. On March 8, 1968, this application was denied by Mr. Justice Black.

## I

Whether the McCarran-Ferguson Insurance Regulation Act, 15 U.S.C. § 1011 et seq. (hereinafter the McCarran-Ferguson Act) prevents the petitioner from compelling arbitration of this dispute pursuant to § 4 of the Federal Arbitration Act[2] is the threshhold and crucial question. For the reasons that follow, this Court answers that question in the negative.

In United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), the Supreme Court decided that the business of insurance was commerce and therefore subject to federal regulatory legislation, specifically the anti-trust laws. South-Eastern Underwriters reversed the pre-existing rule that the business of insurance was not commerce and hence subject only to state regulation. See Paul v. State of Virginia, 75 U.S. 168, 19 L.Ed. 357 (1868); New York Life Insurance Co. v. Deer Lodge County, 231 U.S. 495, 34 S.Ct. 167, 58 L.Ed. 332 (1913).

The McCarran-Ferguson Act was enacted in 1945 in order to "allay doubts" that South-Eastern Underwriters impaired "the continuing power of the States to tax and regulate the business of insurance." FTC v. Travelers Health Ass'n, 362 U.S. 293, 299, 80 S.Ct. 717, 721, 4 L.Ed.2d 724 (1960); State Board of Insurance v. Todd Shipyards Corp., 370 U.S. 451, 452, 82 S.Ct. 1380, 8 L.Ed. 2d 620 (1962); Maryland Casualty Co. v. Cushing, 347 U.S. 409, 413, 74 S.Ct. 608, 98 L.Ed. 806 (1954); Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 429–433, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946).

The purpose and scope of the statute is summed up in the House Report on the bill:

"It is not the intention of Congress in the enactment of this legislation to clothe the States with any power to regulate or tax the business of insurance beyond that which they had been held to possess prior to the decision of the United States Supreme Court in the *Southeastern Underwriters Association* case. Briefly, your committee is of the opinion that we should provide for the continued regulation and taxation of insurance by the State, subject always, however, to the limitations set out in the controlling decisions of the Supreme Court * * * which hold, *inter alia*, that a State does not have power to tax contracts of insurance or reinsurance entered into outside its jurisdiction by individuals or corporations resident or domiciled therein covering risks within the State or to regulate such transactions in any way." H.R.Rep.No. 143, 79th Cong., 1st Sess. 3 (1945), U.S. Code Cong. Serv. 1945, p. 671.

The Congressional policy is enunciated in a prefatory section of the Act stating:

"Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress should not be construed to impose any barrier to the regulation or taxation of such business by the several States" 15 U.S.C. § 1011.

2. It is uncontroverted that the agreement in issue satisfies the jurisdictional requirements of the Act. Section 2 of the Federal Arbitration Act, 9 U.S.C. § 2, provides that a written arbitration provision "in * * * a contract evidencing a transaction involving commerce * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The agreement in issue involving interstate transactions between companies of different states is manifestly one "evidencing a transaction involving [interstate] commerce."

Section 2(b), 15 U.S.C. § 1012(b) —the statutory section central to the resolution of the problem now before the Court—provides:

"No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That after June 30, 1948, * * * the Sherman Act * * * the Clayton Act and * * * the Federal Trade Commission Act * * * shall be applicable to the business of insurance to the extent that such business is not regulated by State law."

Respondent submits that § 2(b) of the McCarran-Ferguson Act exempts the business of insurance from the coverage of all federal statutes which do not specifically state that their provisions are applicable to insurance. Because there is no such specification in the Federal Arbitration Act, respondent argues that that statute is not applicable to this insurance case and, consequently, that there is no subject matter jurisdiction to entertain the petition.

Disputing the basic premises underlying the respondent's position, the petitioner contends that the controlling and precise inquiry is whether the Federal Arbitration Act invalidates, impairs or supersedes any conflicting State law enacted for the purpose of regulating the insurance business. In the petitioner's view the Federal Arbitration Act has no such invalidating, impairing or superseding effect in the instant case; ergo, it is not rendered inapplicable by the McCarran-Ferguson Act. But the petitioner does not stake its case entirely on that proposition.

Assuming *arguendo* that the McCarran-Ferguson Act renders the Federal Arbitration Act inapplicable, the petitioner adopts diversity of citizenship as the predicate for this Court's jurisdiction to compel arbitration pursuant to State law. It is the petitioner's claim that this case is controlled by New York law, under which the parties' agreement to arbitrate is valid and specifically enforceable.

■ The primary issue to be resolved may be broadly formulated in these terms: to what extent does the McCarran-Ferguson Act limit the operation of federal statutes (such as the Federal Arbitration Act) that do not by their terms specifically apply to the business of insurance? The plain and unambiguous statutory language is persuasive evidence that the McCarran-Ferguson Act was not intended to preclude the application of these federal statutes to insurance *unless* they invalidate, impair or supersede applicable State legislation regulating the business of insurance. However, in reaching this conclusion, the Court does more than simply follow the route of statutory language; it seeks to effectuate the Act's fundamental objective and dominant intention. Judge Learned Hand's celebrated dictum bears repetition: "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.), aff'd 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

■ The primary legislative purpose of the McCarran-Ferguson Act was to reaffirm the States' power to regulate insurance (subject to constitutional limitations) and to ensure that state regulatory schemes would not be impaired and overridden except by specific and explicit Congressional enactments. There is no discernible evidence of a legislative intention that, in the absence of conflicting state regulatory legislation, federal statutes (such as the Federal Arbitration Act) would be inapplicable to the business of insurance. This view is brought into sharp focus by de-

cisions interpreting the McCarran-Ferguson Act that have upheld federal law despite conflicting state statutes. Maryland Casualty Co. v. Cushing, supra, 347 U.S. at 412–413, 74 S.Ct. at 610 (Federal Maritime Law—"The question whether application of the [Louisiana] direct action statute conflicts with federal maritime law is not touched by the *South-Eastern Underwriters* case. In the face of this unequivocal expression of congressional meaning, the statute cannot be read as doing something that Congress has told us it was not intended to do. The McCarran Act is not relevant here."); Sears Roebuck and Co. v. All States Life Insurance Co., 246 F.2d 161, 172 (5th Cir. 1957) (Lanham Act— "There is nothing in the McCarran Act that limits the right of the owner of a trade or service name to seek redress in the federal courts merely because the approval of the name of the infringing insurance company is part of the duties of the state board."); Zachman v. Erwin, 186 F.Supp. 691, 694 (S.D.Tex. 1960) (Securities Act of 1933—"That statute [the McCarran-Ferguson Act] does not preclude application of the Securities Act to the insurance business since there is no indication that it invalidates, impairs or supersedes any law of the State of Texas regulating the insurance business.").

SEC v. National Securities, Inc., 387 F.2d 25 (9th Cir. 1967), affirming, 252 F.Supp. 623 (D.Ariz.1966), upon which respondent principally relies, does not dictate a contrary result. In that case, the Securities and Exchange Commission sought to invalidate the merger of two stock life insurance companies on the ground that the anti-fraud provisions of the Securities Exchange Act of 1934 were violated. The District Court merely held that application of the Federal Act "would at least 'impair', if not 'invalidate' or 'supersede' " an Arizona statute enacted for the purpose of regulating the business of insurance, which contains the specific requirement that any proposed merger of insurance companies must be approved by the state director of insurance. (252 F.Supp. at 626). The Court of Appeals noted that the State of Arizona had "affirmatively asserted it power to regulate the merger of insurance companies" (387 F.2d at 31) and that the legislative history of the 1964 amendments to the Securities Acts indicate that the States were to "be given an opportunity to demonstrate their ability effectively to protect the investors as well as the policyholders." (1964 U.S. Code Cong. & Admin. News, p. 3022, quoted in 387 F.2d at 32, n. 6). The Court of Appeals, therefore, affirmed the District Court's holding that application of the Securities Exchange Act of 1934 would impair, invalidate or supersede the Arizona law. (387 F.2d at 32). The Court did not hold that the Securities Exchange Act of 1934 was inapplicable for the reason that it does not contain a provision making it applicable to insurance. What *National Securities, Inc.* did hold was that the federal statute did not govern because it impaired a detailed state regulatory scheme specifically and directly aimed at the insurance business.

Next to be considered is the question whether there is any State law enacted for the purpose of regulating insurance which would be invalidated, impaired or superseded if the Federal Arbitration Act is applied to the present case. The only two States having an interest in the present controversy are Texas and New York. Respondent asserts that Article 224 of the present Texas Arbitration Statute is in direct conflict with the Federal Arbitration Act. This Texas provision renders enforceable written agreements to arbitrate future as well as existing disputes but provides that "none of the provisions of this Act shall apply to * * * any contract of insurance or any controversy thereunder." Title 10 Vernon's Ann. Civil Stats. Art. 224 (1967 Supp.) However, this provision is applicable only to arbitration agreements made after January 1, 1966 and, therefore, would not apply to the instant agreement, which was executed in September, 1965. Id. Art. 238–

3 (1967 Supp.). Furthermore, the agreement in question is a contract of reinsurance between two insurance companies, not a standard insurance contract; and the present statute was enacted to protect Texas insureds from being forced to accept insurance policies—particularly "uninsured motorist" policies—containing arbitration clauses. See, Note 44 Texas L.Rev. 372, 373 (1965); P. Carrington, The 1965 General Arbitration Statute of Texas, 20 Southwestern L.J. 21, 38 (1966).

The Texas General Arbitration Act in force at the time the agreement in issue was executed provides that, while agreements to arbitrate existing controversies would be enforced by the courts of Texas, agreements to arbitrate future disputes would not be judicially enforced. Title 10 Vernon's Civil Stats. Arts. 224–238 (1959 ed.).

█ Furthermore, this statute is not a "law enacted by any State for the purpose of regulating the business of insurance" within the meaning of § 2(b) of the McCarran-Ferguson Act. The Texas statute is a codification of an old common-law rule, whose purpose was not to regulate the insurance business but rather to preserve the jurisdiction of the courts. See, Dougherty and Graf, Should Texas Revise Its Arbitration Statutes?, 41 Texas L.Rev. 229 (1962).

Another salient aspect of interpretation is illuminated by those cases which, in construing the proviso to § 2(b) of the McCarran-Ferguson Act, have held that State "regulation" means regulation by the State within whose borders the activity in question has its operative force. In FTC v. Travelers Health Ass'n, 362 U.S. 293, 300, 301, 80 S.Ct. 717, 721, 4 L.Ed.2d 724 (1960), the Supreme Court pointedly stated:

"* * * [I]t is clear that Congress viewed state regulation of insurance solely in terms of regulation by the

law of the State where occurred the activity sought to be regulated. There was no indication of any thought that a State could regulate activities carried on beyond its own borders.

\* \* \* \* \* \*

The three Senate conferees, Senators McCarran, O'Mahoney and Ferguson, repeatedly emphasized that the provision did not authorize state regulation of extraterritorial activities."

Accord: United States v. Chicago Title and Trust Co., 242 F.Supp. 56, 60 (N.D. Ill.1965) ("The Supreme Court decisions \* \* \* would also indicate the inability of the states to affect matters extraterritorially.").

There is no discernible reason why State "regulation" should be defined differently in § 2(b) of the McCarran-Ferguson Act itself. The legislative history of § 2(b) strongly substantiates the proposition that a State is not empowered to regulate interstate insurance practices which have their situs outside its borders. See H.R.Rep.No. 143, 79th Cong., 1st Sess. 3 (1945). It is this Court's opinion that the agreement herein between the petitioner, a New York corporation and the respondent, a Texas corporation, provides for arbitration in New York City of disputes arising under a contract of reinsurance on group life insurance policies written on New York municipal employees; and that application of the Texas statute to prohibit the submission of this extraterritorial dispute to arbitration in New York City would not be "regulation" within the meaning of § 2(b) of the McCarran-Ferguson Act.

█ Traditional conflict of laws rules also support the Court's foregoing conclusion. If the Federal Arbitration Act were not applicable to the present case, this Court would have jurisdiction by virtue of diversity of citizenship [3] to

---

3. Respondent's contention that, absent the Federal Arbitration Act, this Court lacks subject matter jurisdiction is rejected. The Federal Arbitration Act does not create an independent basis for federal

jurisdiction. Apart from the requirements of the Act, diversity of citizenship or a federal question is requisite for federal jurisdiction. Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402,

decide this case under State law. Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382, 388, n. 3 (2d Cir.) (Lumbard, C. J., concurring), cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 253 F.Supp. 359, 363 (S.D.N.Y.1966); Formigli Corp. v. Alcar Builders, Inc., 329 F.2d 79, 81 (3d Cir. 1964); O'Meara v. Texas Gas Transmission Corp., 230 F.Supp. 788, 790 (N.D.Ill.1964); Cook v. Kuljian Corp., 201 F.Supp. 531, 535 (E.D.Pa. 1962). Cf. Boston & Maine Corp. v. Chicago, B & Q RR Co., 381 F.2d 365 (2d Cir. 1967).

Under Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this Court would apply New York choice-of-law rules to determine whether Texas or New York law is applicable to the instant dispute. For conflicts purposes, New York treats arbitration as being part of its "law of remedies" and, therefore, the law of the forum (New York) would govern. Matter of Gantt, 297 N.Y. 433, 438–439, 79 N.E.2d 815 (1948); Metro Industrial Painting Corp. v. Terminal Construction Co., supra, 287 F.2d at 388, n. 3 (concurring opinion); Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, supra, 253 F.Supp. at 364.

Even under the more modern grouping of contacts choice-of-law rule applied by New York to contracts generally, See Auten v. Auten, 308 N.Y. 155, 124 N.E. 2d 99 (1954), New York law would be applicable as almost all the significant contacts of the transaction were with New York,—where the ultimate insureds reside and where it was agreed arbitration was to take place.

Before § 2(b) of the McCarran-Ferguson Act could become operative, State law *applicable* to the present case must be invalidated, impaired or superseded by the Federal Arbitration Act. Because Texas law would not be applicable even if there were no Federal Arbitration Act, any impairment of the Texas Arbitration Statute would not pose a McCarran-Ferguson Act problem.

Nor is any New York law enacted for the purpose of regulating the business of insurance invalidated, impaired or superseded by the application to this case of the Federal Arbitration Act. The New York Arbitration Act—which is substantially similar to the Federal Arbitration Act—provides that written agreements to arbitrate existing and future controversies are valid and enforceable. N.Y. CPLR § 7501. Moreover, there is no prohibition against arbitrating disputes arising under contracts of reinsurance.

The only possible difference between the New York and Federal Arbitration Acts relevant to the instant case concerns the question of the arbitrability of a claim that the reinsurance agreement was fraudulently induced. Such an allegation is made by the respondent in paragraph 18 of its answer.

Under federal law, where there is a broad, separable arbitration provision and a party alleges fraud in the inducement of the contract generally— as opposed to fraud in the inducement of the arbitration clause itself—this issue is reserved for the arbitrators and not for the Court. Prima Paint Corp.

408 (2d Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 62 F.2d 1004, 1006 (2d Cir. 1933) (L. Hand, J.); Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382. 384 (2d Cir.), cert. denied, 368 U.S. 817, 82 S. Ct. 31, 7 L.Ed.2d 24 (1961); Pock v. New York Typographical Union No. 6, 223 F.Supp. 181, 183 (S.D.N.Y.1963); Victorias Milling Co. v. Hugo Neu Corp.,

196 F.Supp. 64, 69–70 (S.D.N.Y.1961); Local 1416 Intern. Ass'n of Machinists etc. v. Jostens, Inc., 250 F.Supp. 496, 499 (D.Minn.1966); See Committee on Commerce, Trade & Commercial Law, The United States Arbitration Act and its Application, 11 A.B.A.J. 153, 154 (1925).

In the present case, there is diversity of citizenship inasmuch as Hamilton is a citizen of New York and Republic is a citizen of Texas.

v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Robert Lawrence Co v. Devonshire Fabrics, Inc., 271 F.2d 402, 410 (2d Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); El Hoss Engineering & Transport Co. v. American Independent Oil Co., 289 F.2d 346, 349 (2d Cir. 1961); Petition of Kinoshita & Co., 287 F.2d 951 (2d Cir. 1961).

In New York, the law "is not entirely clear." Prima Paint Corp. v. Flood & Conklin Mfg. Co., supra, 388 U.S. at 400, n. 3, 87 S.Ct. 1801, 18 L.Ed.2d 1270. Most of the reported cases state that a claim of fraud in the inducement of the contract is an issue for the Court and not for the arbitrators. Matter of Exercycle Corp., 9 N.Y.2d 329, 334, 214 N.Y.S.2d 353, 356, 174 N.E.2d 463 (1961); Matter of Wrap-Vertiser, 3 N.Y.2d 17, 163 N.Y.S.2d 639, 143 N.E.2d 366 (1957) (dictum). On the other hand, there is authority holding that, if the arbitration clause is sufficiently broad, the issue of fraudulent inducement of the contract is a question for the arbitrators. Matter of M. W. Kellog Co., 9 A.D.2d 744, 192 N.Y.S.2d 869 (1st Dep't 1959); Fabrex Corp. v. Winard Sales Co., 23 Misc.2d 26, 200 N.Y.S.2d 278 (N.Y.Co.1960); Matter of Amphenol Corp., 49 Misc.2d 46, 266 N.Y.S.2d 768 (N.Y.Co.1965), aff'd mem., 25 A.D.2d 497, 267 N.Y.S.2d 477 (1st Dep't 1966).

If New York law allows the issue of fraud in the inducement of the contract to be arbitrated, there is no conflict with the Federal Arbitration Act. But even if New York law requires this particular issue to be judicially resolved, there is no McCarran-Ferguson Act problem. The New York law on arbitrability is not specifically directed to the insurance business; nor is it intended to proscribe or permit "certain conduct on the part of the insurance companies." California League of Independent Insurance Producers v. Aetna Casualty & Surety Co., 175 F.Supp. 857, 860 (S.D.Cal.1959). It follows that the New York law on arbitrability cannot be considered a state law enacted for the purpose of regulating the business of insurance within § 2(b) of the McCarran-Ferguson Act. In fact (as noted earlier in this opinion), the purpose and scope of the McCarran-Ferguson Act have been narrowly construed; and federal law has been applied even where there is conflicting state law applicable to the business of insurance. Maryland Casualty Co. v. Cushing, supra, 374 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (Federal Maritime Law not rendered inapplicable by Louisiana direct action statute permitting certain suits against insurance companies); Sears Roebuck & Co. v. All States Life Insurance Co., supra, 246 F.2d 161 (Lanham Act not displaced by Texas Insurance Code provision requiring approval of the names of insurance companies by the Texas Board of Insurance Commissioners and a finding that such names were not likely to mislead the public.).

■ This Court holds that the McCarran-Ferguson Act presents no barrier to applying the Federal Arbitration Act to the present case. The respondent's cross-motion to dismiss the petition herein for lack of subject matter jurisdiction is denied.

II

This Court next considers the respondent's claim that the petition should be dismissed because the Court lacks in personam jurisdiction. This contention is without merit.

■ A foreign defendant's agreement to arbitrate in New York constitutes a submission to the jurisdiction of this Court to compel arbitration pursuant to § 4 of the Federal Arbitration Act. This was the holding in Farr & Co. v. Cia Intercontinental de Navegacion, 243 F.2d 342, 347 (2d Cir. 1957). Accord: Victory Transport, Inc. v. Comisaria General, 232 F.Supp. 294, 295 (S.D.N.Y. 1963), aff'd 336 F.2d 354, 363 (2d Cir. 1964).

The arbitration agreement herein provides that arbitration shall "be held

in the city where the home office of Ceding Company [Hamilton] is domiciled." (Article XII of Reinsurance Agreement). Hamilton, the petitioner, is a New York corporation, whose principal place of business is in New York City. (Petition To Compel Arbitration, ¶ 1). Under the rule enunciated in *Farr & Co.*, it is clear that, by agreeing to arbitrate in New York, the respondent must be deemed to have consented to the jurisdiction of this Court to compel such arbitration.

■ The respondent further argues that the service of process effectuated in this case is a nullity because the respondent was not served within the territorial limits of the State of New York as required by Rule 4(f) [4] of the Federal Rules of Civil Procedure. The respondent was personally served at its home office in Dallas, Texas by the United States Marshal. In addition, the respondent was served by certified mail, return receipt requested, on December 14, 1967. (See Affidavit of Alfred Miller, sworn to March 14, 1968, p. 2.).

In Farr & Co. v. Cia Intercontinental de Navegacion, supra, 243 F.2d 342, 348, the Court rejected the identical contention and upheld the sufficiency of service by registered mail. The Court stated that § 4 of the Federal Arbitration Act incorporates Rule 4(d) (7) [5] of the Federal Rules of Civil Procedure and permits State methods of serving process to be used to compel specific performance of arbitration agreements. Rule 4(f) which relates solely to federal service of process was held not to bar the use of State methods of service, pursuant to Rule 4(d) (7). Applicable New York law holds that "consent to jurisdiction includes consent to service by any method consistent with due process." Petrol Shipping Corp. v. Kingdom of Greece, 360 F.2d 103, 107 (2d Cir.), cert. denied, 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213 (1966). Service of process in the present case is unquestionably valid under New York law.

The respondent's cross-motion to dismiss for lack of in personam jurisdiction is denied.

### III

■ The respondent also seeks to dismiss the petition on the ground that the petitioner has failed to join an indispensable party. The respondent asserts that the reinsurance agreement entered into in September, 1965 was actually tripartite in nature and "was evidenced in part by two separate agreements," one between the petitioner and the respondent and the other between the respondent and Financial Security Life Insurance Company. (Affidavit of Thomas G. Nash, Jr., sworn to March 11, 1968, p. 2.). By the terms of this tripartite

4. Rule 4(f) of the Federal Rules of Civil Procedure provides:

"(f) *Territorial Limits of Effective Service.* All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state. In addition, persons who are brought in as parties pursuant to Rule 14, or as additional parties to a pending action or a counterclaim or cross-claim therein pursuant to Rule 19, may be served in the manner stated in paragraphs (1)–(6) of subdivision (d) of this rule at all places outside the state but within the United States that are not more than 100 miles from the place in which the action is commenced, or to which it is assigned or transferred for trial; and persons required to respond to an order of commitment for civil contempt may be served at the same places. A subpoena may be served within the territorial limits provided in Rule 45."

5. Rule 4(d) (7) of the Federal Rules of Civil Procedure provides:

"(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

agreement, the petitioner would cede to the respondent 80% of the risks written, provided that the respondent would cede 80% of that amount to Financial Security Life Insurance Company. (Affidavit of William A. Boles, sworn to January 3, 1968, p. 1, attached as Exhibit A to Nash Affidavit.). Moreover, there was no arbitration agreement entered into between the three parties. (Boles Affidavit, p. 2.). Because Financial Security is not a party in this proceeding, the respondent asserts "it is improper to pursue an action to construe this contract when only two of the three parties affected by the ultimate resolution of the issues are within the jurisdiction and participating in these proceedings." (Respondent's Memorandum of Law, p. 12.).

The respondent's contention that the reinsurance agreement is actually tripartite in nature is flatly contradicted by the affidavit of Edwin S. Newman, who was present at the time of the contract negotiations. In his affidavit (sworn to January 19, 1968), Mr. Newman avers that "[t]he reinsurance agreement of September 1965 between Hamilton Life Insurance Company and Republic National Life Insurance Company was a separate and distinct agreement between the parties, and there was no concurrent 'parol' agreement apart from said actual reinsurance treaty that the group business reinsured from Hamilton Life to Republic National Life was in turn to be reinsured to a third company [Financial Security] * * *." (p. 2).

Moreover, the Hamilton-Republic reinsurance agreement provides:

"ARTICLE XIV

*AMENDMENT*

This instrument contains the sole agreement between the parties hereto on the subject of group reinsurance, and it may be amended only by an instrument in writing which expresses such an intention and is signed with the same formalities as this instrument."

The respondent, Republic, has not produced any writing evidencing the so-called tripartite agreement. To allow the respondent to prove that there was an oral agreement modifying the Hamilton-Republic reinsurance agreement would be contrary to the express terms of the agreement and violative of the parol evidence rule. See, Fogelson v. Rackfay Construction Co., 300 N.Y. 334, 340, 90 N.E.2d 881 (1950).

In any event, Financial Security is not an indispensable party to the present proceeding, which is brought not to construe the parties' rights under the reinsurance agreement, but only to enforce the Hamilton-Republic agreement to arbitrate.

The contention that there is no tripartite arbitration agreement joined in by all of the alleged parties—the petitioner (Hamilton), the respondent (Republic) and Financial Security—does not prevent enforcement of the Republic-Hamilton arbitration agreement.

The crucial fact is that the petitioner and the respondent agreed to arbitrate disputes between themselves. There is no impediment to enforcing an agreement to arbitrate entered into between less than all of the parties to a dispute. Wilko v. Swan, 201 F.2d 439, 445 (2d Cir.), rev'd on other grounds, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Lumbermen's Mutual Casualty Co. v. Borden Co., 268 F.Supp. 303 (S.D.N.Y. 1967). Whatever claims the respondent may have against Financial Security for indemnification or otherwise do not prevent enforcement of the petitioner's right to compel arbitration under the reinsurance agreement.

The respondent's cross-motion to dismiss for failure to join an indispensable party is denied.

IV

The Court concludes that there is no *bona fide* question as to the making and validity of the arbitration agreement and the respondent's "failure to comply therewith." The parties are, therefore,

ordered to proceed to arbitration in accordance with the terms of the agreement.

 The arbitration clause in the present case is separable from the rest of the agreement and clearly broad enough to cover the defenses raised in the respondent's answer: fraud in the inducement of the contract generally, lack of consideration, failure to comply with conditions precedent, illegality of the subject matter of the contract and breach of contract. Indeed, "it would be hard to imagine an arbitration clause having greater scope than the one before us." Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra, 271 F.2d at 412. The validity of these claims as well as the question of the respondent's liability to the petitioner will, therefore, be determined by the arbitrators.

 The respondent's alternative request that these proceedings be stayed is denied because it has "[not made] out a clear case of hardship or inequity in being required to go forward * * *." Landis v. North American Co., 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936). A stay of these proceedings would "work damage" to the petitioner, which has been unsuccessfully attempting to compel arbitration of this dispute for almost one year. Moreover, similar requests that proceedings in this district be stayed have recently been denied by the United States District Court for the District of Arizona, the Ninth Circuit Court of Appeals and the United States Supreme Court. In fact, proceedings in the United States District Court for the District of Arizona have been stayed pending this Court's determination of the motions before it.

The petitioner's motion to compel arbitration is granted. The respondent's cross-motion to dismiss the petition or, in the alternative, to stay these proceedings is denied.

Settle order on notice in accordance with the views expressed in this opinion.

## ON REARGUMENT

The Court grants the motion for reargument; and, after hearing counsel and considering their briefs upon such reargument, the Court adheres to its original decision in all respects.

A thorough study of the contentions and authorities submitted by respondent upon reargument discloses that nothing significant has been added to the original presentation. Nor has the Court overlooked any of respondent's former or "new" factual and legal positions.

In the interest of clarification, the Court points out that the order to compel arbitration has been granted herein *solely* pursuant to 9 U.S.C. § 4 (the Federal Arbitration Act), the diversity of citizenship of the parties being a pre-requisite to the application of the Act (See 9 U.S.C. § 4 and opinion of the Court, fn. 3). The Court's discussion of choice-of-law principles (See opinion of the Court, pp. 231–233) was intended only to supplement the Court's conclusion that Texas law is, for several reasons, inapplicable to the present controversy; and such discussion is not to be read as an alternative disposition of the issues under New York law.

The motion for a stay pending appeal is hereby granted upon the following condition: said appeal shall be prosecuted by the respondent with all deliberate speed; more specifically, respondent shall file its notice of appeal, the appropriate record and briefs in accordance with a schedule representing the minimum delay. To clearly define this schedule, the parties shall, within seven days after the date of the filing of this memorandum, settle an order specifying the dates on which the various steps involved in prosecuting the appeal shall be taken.