**ORMSBEE DEVELOPMENT COMPANY, a Wyoming corporation, Plaintiff,**

**v.**

**Corrine GRACE and Michael P. Grace, Defendants-Cross Defendants-Appellants,**

**v.**

**SANTA FE PACIFIC RAILROAD, Defendant-Cross Claimant-Appellee.**

**Nos. 80–1750, 80–1803 and 81–1161.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 29, 1981.

Decided Jan. 4, 1982.

Rehearing Denied Feb. 23, 1982.

Gary W. Davis, Wichita, Kan. (William E. Dakan, Wichita, Kan., with him on the brief) of Martin, Pringle, Fair, Davis & Oliver, Wichita, Kan. (William E. Snead of Ortega & Snead, Albuquerque, N. M., with him on the brief), for Corrine Grace.

Martha Mansell Eskin, Culver City, Cal., and F. Kimball Joyner, Jr. of Jones, Meiklejohn, Kehl & Lyons, Denver, Colo. (Walter L. Reardon, Jr., Albuquerque, N. M., with them on the brief), for Michael P. Grace.

John R. Cooney and Ruth M. Schifani, Albuquerque, N. M. (Peter J. Adang, Albuquerque, N. M., with them on the brief) of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M., for Santa Fe Pac. Railroad.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

These consolidated appeals challenge a final judgment of the District Court confirming an arbitration award and an order prohibiting proceeding on an arbitration demand.

In June 1968, Michael P. Grace (Michael) purchased six options from Santa Fe Pacific Railroad (Santa Fe) on property owned by Santa Fe believed to contain uranium-bearing ores in the Grants, New Mexico, area. Each option afforded Michael a three year period within which exploration work could be conducted, after which Michael had the option to enter into a uranium mining lease with Santa Fe.

In 1971 Michael exercised his options and entered into several uranium leases with Santa Fe. Each lease provided in part:

> Lessor agrees that if during the term of this lease and agreement Lessee has found and at the expiration of the term of this lease is producing uranium-bearing ore in commercial quantities from the leased premises, Lessor will, upon written request ... renew this lease and agreement ... upon the same terms and conditions...

[App. at p. 131].

Each lease also provided:

> Lessee shall not subject Lessor or the leased premises to any liability or lien for or on account of any work done ... upon

said premises, and if by reason of the failure of Lessee to pay bills or expenses incurred by Lessee, any lien or liens shall be filed against the leased premises ... Lessor may also at its election declare a forfeiture of this Lease and Agreement. [App. at pp. 127–128].

Each lease further provided that:

Any dispute between the parties under this agreement shall be referred to arbitration, each party selecting one arbitrator and the American Arbitration Association designating the third arbitrator. The award of the arbitrator shall be final and binding on the parties hereto.

[App. at p. 132].

Michael thereafter embarked on an exploration and mining program in accordance with his leases. In conjunction with his activities, substantial uranium reserves were discovered, albeit of a relatively low grade, located 3,000 to 5,000 feet underground. Subsequently, as the expiration date of the leases approached, Michael, in an effort to achieve production and retain the leases, turned to "solution mining". Solution mining is a process by which chemicals are injected into the ground, allowed to remain in uranium-bearing rock formations a short time, and then pumped to the surface with the hope of recovering $U_3O_8$ from the processing uranium suspended in the solution. By proceeding in such a manner, Michael was, allegedly, "successful in producing significant quantities of uranium-bearing solution from his operations." [Appellants' Brief at p. 6].

On November 26, 1975, twelve days prior to the expiration date of the principal term of the leases, Michael's operations were shut down when the Environmental Improvement Agency of the State of New Mexico obtained an injunction against him for failure to obtain a permit. Michael subsequently became involved in the renewal of his leases and his solution mining operations were not resumed.

On June 2, 1976, Ormsbee Development Company, a drilling subcontractor, filed suit against Michael and his wife, Corrine, as lessees, and Santa Fe, as owner of the properties, seeking to foreclose on mechanics' liens which it had filed after Michael had failed to pay it for drilling and exploration work. Other subcontractors intervened or filed companion cases, all of which were consolidated with the Ormsbee claims. These disputes were ultimately settled and the complaint dismissed.

Santa Fe, however, filed an original, and, on February 10, 1977, an amended cross claim against Michael seeking a determination that all his rights and interests "and all rights and interests of anyone holding or claiming to hold any interest in the leasehold estates at one time existing in Michael P. Grace" had terminated by reason of his failure to achieve production of uranium-bearing ore in commercial quantities as required by the leases. Santa Fe also alleged a breach of the leases amounting to a forfeiture by allowing the filing of the lien claims.

Prior to Santa Fe filing its amended cross claim, Michael, on July 19, 1976, filed a demand for arbitration with the Phoenix Regional Office of the American Arbitration Association seeking to declare his leases valid and in full effect. In March of 1977, the law firm of Kantor and Carmody entered its appearance for Michael and Corrine in federal district court, and thereafter, on April 11, 1977, filed a motion on behalf of Michael and Corrine for stay of proceedings on Santa Fe's cross claim pending arbitration.

On July 5, 1977, the District Court herein entered an order directing that Michael and Corrine would not be required to file an answer to Santa Fe's cross claim pending arbitration. On the same day, the Court also entered an order, dismissing with prejudice, Santa Fe's motion requesting an injunction enjoining Michael from proceeding with arbitration "for the reason that that question is now moot as a result of the Court's ruling, filed herein, granting Defendants', Michael P. Grace II and Corrine Grace's motion to stay proceeding pending arbitration." [App. at p. 377]. This order bore the caption "Approved and Stipulated To Prior To Submission To The Court" and

was executed by "Kantor and Carmody P.A." as "Attorneys for Michael P. Grace II and Corrine Grace."

The arbitration process thus commenced with Michael and Santa Fe each selecting an arbitrator and the American Association of Arbitrators (Association) selecting a third neutral arbitrator, one Dr. Jack T. Mommsen (Mommsen). An arbitration evidentiary hearing conducted under the auspices of the Association began on April 17, 1979, and ended some two and one-half weeks later on May 1, 1979.

On June 27, 1979, the arbitrators, with one member dissenting, entered their award, holding that the leases had "expired under the terms and on the termination dates defined in the leases", that "the leases are not valid", and that "all rights and interests of Grace in the leases are terminated."

On July 3, 1979, Santa Fe filed a motion to confirm the award of the arbitrators. On September 25 and 26, 1979, Michael and Corrine, respectively, filed separate motions to vacate or set aside or modify the arbitration award.

Within her motion, Corrine alleged, *inter alia,* that: the leases were community property, that she had a one-half interest in them and that she therefore should have been a named party to the arbitration; there was evident partiality on the part of the neutral arbitrator; and that William Condren, her husband's attorney, had a conflict of interest which should have prohibited his firm acting as counsel in the arbitration proceeding. Within his motion, Michael alleged, as had Corrine, the issue of the community property nature of the leasehold interests and the evident partiality of the neutral arbitrator. Michael also alleged that a substantial amount of relevant evidence was improperly excluded by the arbitrators, that the decision making process of the arbitrators was not proper, and that a continuance on the hearing should have been granted due to his health.

On April 1, 1980, the District Court entered its opinion confirming the arbitration award in favor of Santa Fe. In so doing the Court found/concluded, *inter alia*: for purposes of resolving the motions, the leases are assumed to be community property; Corrine's attorney objected to Santa Fe's request that Corrine be made a formal party to the arbitration proceeding because Corrine had not signed an arbitration agreement; at issue is whether a single spouse can participate in a proceeding affecting community real property, employ counsel and direct the litigation without the joinder of the other spouse—that the question is a management question; under the law of New Mexico, Corrine is bound by the management actions of Michael; the claim of evident partiality arose from the alleged connections between Mommsen and the Modrall law firm which represented Santa Fe; the alleged connections included the fact that Mommsen's active clients included General Atomic Company, which is a partnership between Gulf Oil and Scallop Nuclear, and that the Modrall firm which represents Santa Fe also represents Gulf Oil; the alleged connections giving rise to evident partiality also included Mommsen's work for Texas Eastern Nuclear, a subsidiary of Texas Eastern Company and that the Modrall firm represents Transwestern Pipeline Company, another subsidiary of Texas Eastern Company; Mommsen was being considered as an arbitrator in a case with Homestake Mining Company, which was also represented by the Modrall firm; Mommsen sent Grace's attorney, Dinsmore Adams a copy of his resume wherein he (Mommsen) related his connections with General Atomic, Texas Eastern Nuclear, and Homestake Mining but did not mention Gulf Oil or the Modrall firm; under *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), an arbitrator's failure to disclose non-trivial relationships with parties is grounds for vacating an arbitration award regardless of any actual bias, prejudice, or unfairness; Mommsen complied with his obligation under *Commonwealth Coatings*; the Modrall firm would be under the same obligation of disclosure except when, as here, there is no evidence that the

Modrall firm was made aware of the relationship at issue and thus the occasion for its disclosure never arose; the alleged conflicts of interest of William Condren as Michael's attorney, even if true, would not be grounds for vacating the arbitration award; the rulings of the arbitrators vis-a-vis the admissibility and applicability of certain leases proffered by Michael, the distinction made between leases with automatic renewal provisions as opposed to renegotiated renewals, and the arbitrators' exclusion of the KSN lease, were not clearly erroneous nor an abuse of discretion; Michael Grace's assertions that the arbitrator chosen by him, Mr. George Cutler, was denied an opportunity to fully participate in the decision making process, even if true, does not warrant vacation of the arbitration award; and that Michael Grace's contentions that the award should be set aside because he was forced to go to arbitration at a time when he was recovering from surgery and could not attend the entire arbitration hearing is completely without merit when, as here, Grace did appear during the course of the hearings and was allowed to testify on his own behalf.

The District Court concluded that none of the arguments advanced by Michael or Corrine were well taken and appeared "to be yet one more attempt to avoid the consequences of an arbitration upon which they insisted." The District Court also directed the entry of a separate order confirming the arbitration award.

Thereafter, Corrine filed a motion, adopted and joined in by Michael, for reconsideration of the April 1, 1980 opinion and order confirming the arbitration award. In support of this motion Corrine filed an affidavit executed by Mark Thompson, a partner in the Modrall law firm, wherein Thompson acknowledged: attending a lecture that Mommsen had given for General Atomic; becoming aware through a conversation with an associate that Mommsen was the neutral arbitrator in the case at hand; and that at no time prior to April 1, 1980 did he ever discuss in detail his awareness of Mommsen's relationship with General Atomic with any members of the firm working on the arbitration.

On May 15, 1980, the District Court entered a memorandum opinion upholding its opinion of April 1, 1980, noting that "The opinion . . . will not be amended, except as supplemented herein . . ." Within its second opinion the District Court held, inter alia : Thompson's affidavit did not warrant reversing the Court's prior ruling on the lack of evident partiality; Corrine was represented by counsel during the course of the arbitration; and Mommsen's prior dealings with General Atomic and his continuing contact with it was not in violation of Commonwealth Coatings, supra.

On May 23, 1980, the District Court entered its judgment in favor of Santa Fe Pacific in accordance with its opinions of April 1 and May 15, 1980. Within its judgment the Court ordered that the Graces had no interest in the Santa Fe leases; the leases terminated as of the termination date set forth in each lease; Michael was obligated to perform any outstanding leasehold obligations which survived the expiration of the leases; Michael was obligated to indemnify Santa Fe against any judgments against it in favor of any lien claimants for work done for Michael on the leases; Michael was to pay Santa Fe $2,465.32 for costs of the arbitration proceeding; and that Santa Fe's cross claims against the Graces were deemed merged with the judgment and to the extent such claims were not awarded by the arbitrators the same were dismissed with prejudice.

On August 6, 1980, Corrine filed a motion with this court for certification requesting that we certify to the Supreme Court of New Mexico the question of whether a person's community property interest in New Mexico real property can be terminated in an arbitration or other legal proceeding to which such person was not made a party. Michael joined therein pursuant to his motion for a stay of proceedings and motion for an extension of time to file a docketing statement. On September 18, 1980, we denied the motions for certification and stay but permitted the request for certification

to be renewed and presented on appeal proper.

On March 14, 1980, Michael filed a demand for arbitration with the American Arbitration Association in Los Angeles, California, directed to Santa Fe. Within this demand, Michael sought to have determined: the amount due him for work performed and for damages not yet computed; and a "determination of the duties owed by Santa Fe and neutral arbitrator" to him and "whether the breach of duties occurred", and "[the] effect on prior arbitration". Michael also requested leave to amend to allege further damages when ascertained.

After the demand for arbitration was served on Santa Fe it filed a "Motion to Stay Arbitration and for Order to Show Cause" in the United States District Court for the District of New Mexico, the same court which had previously confirmed the arbitration award in favor of Santa Fe. Within its motion, Santa Fe asserted that the issues involved in the arbitration in California were identical to those issues considered in the New Mexico arbitration proceedings.

On January 30, 1981, the District Court entered an order prohibiting Michael from proceeding with the California arbitration demand. The District Court further ordered Michael to dismiss his arbitration demand within fifteen (15) days.

On appeal in No. 80–1803 Michael contends: (1) The question of whether a person's community property interest in New Mexico real property may be terminated in an arbitration proceeding to which such person was not made a party should be certified to the Supreme Court of New Mexico; (2) The arbitration award should be vacated in view of the arbitrator's refusal to hear evidence on the construction of the lease language "production of uranium-bearing ore in commercial quantities"; (3) The arbitration award should have been vacated because of the evident partiality of the neutral arbitrator; and (4) The trial court should have granted discovery and an evidentiary hearing on matters relating to the conduct of the arbitration proceeding.

On appeal in No. 80–1750 Corrine contends: (1) The issue of termination of her community property interest should be certified to the Supreme Court of New Mexico; (2) The District Court erroneously confirmed the arbitration award in light of the failure of the neutral arbitrator and the law firm representing Santa Fe to disclose significant conflicts of interest; (3) The Court erred in denying discovery and an evidentiary hearing on the question of conflicts of interest; and (4) Whether the award should be vacated in view of the majority's failure to hear or consider the views of the arbitrator selected by Michael and the panel's exclusion of significant evidence.

On appeal in No. 81–1161 Michael contends: (1) The District Court acted beyond its jurisdiction in entering the order prohibiting him from proceeding with the California arbitration request; (2) The issues to be arbitrated in the California arbitration proceeding are not barred by res judicata or collateral estoppel; and (3) The District Court should have deferred to the California arbitration demand.

## I.

At the outset we deem it important to set forth the parameters governing our review.

■ Once it has been established that the parties had entered into a binding agreement to arbitrate, the entire controversy, including the validity [and essence] of the disputed contract must be referred to arbitration. *Muh v. Newburger, Loeb & Co., Inc.,* 540 F.2d 970 (9th Cir. 1976). Parties who agree to submit matters to arbitration are presumed to agree that everything, both as to law and fact, necessary to render an ultimate decision is included in the authority of the arbitrators. *Continental Materials Corporation v. Gaddis Mining Company,* 306 F.2d 952 (10th Cir. 1962). Doubts are to be resolved in favor of arbitrability. *Oil, Chemical & Atomic Workers v. American Oil Company,* 528 F.2d 252 (10th Cir. 1976). Once an arbitration award is entered, the finality of arbitration weighs

heavily in its favor and cannot be upset except under exceptional circumstances. *Fizer v. Safeway Stores, Inc.*, 586 F.2d 182 (10th Cir. 1978).

A party attacking the legality of an arbitration award provided for within a contract has the burden of sustaining such an attack. *Wright Lumber Company v. Herron*, 199 F.2d 446 (10th Cir. 1952). Courts are, expectedly, justified in exercising great caution when asked to set aside an arbitration award, which is the product of the theoretically informal, speedy and inexpensive process of arbitration, freely chosen by the parties. *Andros Compania Maritima v. Marc Rich & Co., A. G.*, 579 F.2d 691 (2d Cir. 1978). Furthermore, arbitration awards generally need not delineate reasons or reasoning, at least when the grounds for the award may be gleaned from the record. *Farkar Co. v. R. A. Hanson DISC, Ltd.*, 604 F.2d 1 (2d Cir. 1979).

A court, therefore, is not entitled to judge an arbitration award independently. *Campo Machining Co. Inc. v. Local Lodge No. 1926*, 536 F.2d 330 (10th Cir. 1976). Arbitrators are, of course, obligated to disclose possible bias. *Sanko S.S. Co. Ltd. v. Cook Industries, Inc.*, 495 F.2d 1260 (2d Cir. 1973), *citing to Commonwealth Coatings v. Continental Cas. Co., supra*. However, it is only clear evidence of impropriety which justifies the denial of summary confirmation of an arbitration award. *National Bulk Carriers v. Princess Management*, 597 F.2d 819 (2d Cir. 1979). For an award to be set aside, the evidence of bias or interest of an arbitrator must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative. *Tamari v. Bache Halsey Stuart, Inc.*, 619 F.2d 1196 (7th Cir. 1980), *cert. denied*, 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93.

Finally, we deem it important to observe that the right to arbitration, like any other contract right, can be waived. *Reid Burton Construction Inc. v. Carpenters District Council, Etc.*, 614 F.2d 698 (10th Cir. 1980), *cert. denied*, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27; *Commercial Iron & Metal Co. v. Bache Halsey Stuart, Inc.*, 581 F.2d 246 (10th Cir. 1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979).

Within these general guidelines, we shall now proceed to consider and address the appellate contentions advanced by the Graces.

## II.

Michael and Corrine, individually, within their respective appellate briefs, contend that Corrine's interest in New Mexico real property, *i.e.*, the leases, was improperly terminated in the arbitration proceeding inasmuch as she was not made a party thereto. The Graces further contend that this court should certify the question of whether a person's community property interest in New Mexico real property may be terminated in an arbitration proceeding or other legal proceeding to which such person was not made a party. We hold that these contentions are without merit. A review of the pleadings filed herein establishes that Corrine, although not a formal, named party to the arbitration proceedings, was definitely in fact and in law a party thereto.

As noted, *supra*, this action was commenced on June 2, 1976 when Ormsbee filed suit against Michael and Corrine and Santa Fe seeking to foreclose on certain mechanics' liens for work performed on the subject leases. Thereafter, on November 26, 1976, the firm of Lamb, Metzgar, Franklin & Lines entered an appearance as counsel for Michael and Corrine. Subsequently, on March 9, 1977, the Lamb firm withdrew as the Graces' attorneys and the firm of Kantor and Carmody entered its appearance as their attorneys.

Thereafter, the Kantor firm filed numerous pleadings on behalf of Michael *and* Corrine, including: An April 11, 1977 motion for a stay of proceedings on Santa Fe's crossclaim alleging "that both federal and state law require a stay of proceedings until arbitration is completed"; a July 15, 1977 motion to stay proceedings in several cases related to the Ormsbee action, alleging, as grounds, that the court had already stayed

Santa Fe's crossclaim "pending arbitration of the issues between it [Santa Fe] and Michael P. Grace and Corrine Grace"; a January 31, 1979 motion for a protective order alleging, as grounds, "the pending arbitration of the issues between Santa Fe Pacific Railroad Company and Michael P. Grace II and Corrine Grace." Notwithstanding these motions, in which Michael *and* Corrine requested relief pending arbitration between Santa Fe and Michael *and* Corrine, Corrine's attorney objected to Santa Fe's request that Corrine be made a formal party, inasmuch as she had not signed an arbitration agreement.

The inherent inconsistency with which both Michael and Corrine utilized the pending arbitration proceedings "between it [Santa Fe] and Michael P. Grace and Corrine Grace" and their subsequent attempts to cause the arbitration award to be vacated because it allegedly improperly terminated Corrine's property interest in the leases via the arbitration proceeding to which Corrine was allegedly not a party, was well summarized by the District Court:

> ... To the extent that the above conclusions rely in any way on statements made by Mr. Dinsmore Adams, the Court finds absolutely no merit in the claim that he did not represent Corrine Grace. The affidavit of Elvin Kantor, who was local counsel for Mr. Adams, does not change the situation. The file is replete with claims and representations by Mr. Kantor and Mr. Adams that they were appearing for both Michael and Corrine Grace. Through his affidavit Mr. Kantor has put himself in the unfortunate position of either having misrepresented to the Court who his clients were for some 24 months or having filed a misleading affidavit. Neither position comports with the Code of Professional Responsibility. The Court is completely satisfied that the statements attributed to Mr. Dinsmore Adams, to the extent that they are at all relevant, were made at the time that he represented Corrine Grace, and that the actions of Elvin Kantor, to the extent also that they are at all relevant, were taken on behalf of both Michael and Corrine Grace.

May 15, 1980 Memo Opinion at p. 3. We hold that the District Court correctly found that Corrine, although not a formal party to the arbitration proceeding by her own choosing, was, indeed, a party to the proceeding and represented by counsel throughout.

Assuming, *arguendo*, that Corrine was not a party to the arbitration proceeding, the Graces' allegations that her community property interest in New Mexico real property was improperly terminated by an arbitration or other legal proceeding to which she was not a party would remain, in the final analysis, without merit.

It is uncontested that both Michael and Corrine repeatedly sought and received stays predicated upon their *joint* motions that actions be stayed pending the arbitration proceeding between Santa Fe and themselves. It is also uncontested that: the arbitration request, filed by Michael, sought "to declare the leases valid and in full effect"; the arbitration clause within the leases provided that "[t]he award of the arbitrator shall be final and binding on the parties hereto"; and that the arbitrators found that the leases "expired under the terms and on the termination dates defined in the leases". Under these uncontested circumstances, Corrine cannot, at this late date, argue that her property interests were improperly terminated. Michael and Corrine repeatedly sought relief predicated on pending arbitration, which by its very terms was to be final in nature. The arbitration they so actively sought was accorded them. Thus, we will not set aside the arbitration award on the specious argument that Corrine's property interest was improperly terminated. As the District Court observed:

> In conclusion the Court finds that none of the arguments made by either Corrine or Michael Grace are well taken. They appear to be yet one more attempt to avoid the consequences of an arbitration upon which they insisted. Perhaps arbitration seems less attractive now, but that does not entitle them to a second chance.

April 1, 1980 Memo Opinion at p. 14.

In view of our holding that, although Corrine was not a formally named party to the arbitration proceeding, she was in law and fact a party thereto from its inception to termination, we need not further discuss whether Corrine's interest in New Mexico community real property was allegedly improperly terminated in a proceeding to which she was not made a party. This is so because the interests of Michael and Corrine expired on the termination dates defined in the respective leases and not by virtue of a "transfer".

Similarly, we need not address the Graces' contention that certification to the Supreme Court of New Mexico is appropriate herein. It is sufficient to observe that certification to the Supreme Court of New Mexico is not appropriate when, as here, the issue certified would not be determinative of the issues before us on appeal. *See* N.M.Stat.Ann. § 34–2–8 (1978). Certification is, and must remain, a discretionary function of the federal court, to be utilized, when available, to determine unsettled questions of state law. *Lehman Brothers v. Schein*, 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974); *Imel v. United States*, 523 F.2d 853 (10th Cir. 1975). It is to be utilized with restraint and distinction. *State of Florida v. Exxon Corporation*, 526 F.2d 266 (5th Cir. 1976), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976), *citing to Barnes v. Atlantic & P. Life Ins. Co.*, 514 F.2d 704 (5th Cir. 1975).

In light of our holding that Corrine was not deprived of her community property interest in a proceeding to which she was not a party, the certification argument is not viable.

### III.

The Graces contend the District Court erroneously confirmed the arbitration award in spite of the evident partiality of the neutral arbitrator, Mommsen. They contend that the award should have been vacated under the New Mexico Arbitration Act, N.M.Stat.Ann. § 44–7–12(A)(2) which directs vacation of an award where "there was evident partiality by an arbitrator appointed as a neutral" and Rule 18 of the American Arbitration Association which requires the disclosure by a prospective arbitrator of any circumstances likely to create an impression of bias which he believes might disqualify him as a prospective arbitrator.

The Graces argue that although Mommsen disclosed that he had engaged in consulting work for General Atomic, they were not aware that Mommsen also worked for Gulf Oil, which owned 50% of General Atomic. The Graces deemed this significant inasmuch as Gulf Oil eventually purchased the subject mining properties from Santa Fe on September 14, 1979. Further, the Graces allege that they were not aware that the Modrall firm which represented Santa Fe, also represented General Atomic and Gulf Oil.

The Graces allege that Mommsen's nondisclosure, coupled with the Modrall firm's nondisclosure are fatal to the arbitration award.

In addressing this issue, the District Court observed within its April 1, 1979 order:

The claim of evident partiality arises from the alleged connections between Dr. Mommsen and the Modrall law firm, including the fact that Dr. Mommsen had done consulting work in the past and had as an active client at the time of his selection the General Atomic Company, which is a partnership between Gulf Oil and Scallop Nuclear, and that the Modrall firm represents Gulf Oil. Further it is claimed that Dr. Mommsen did work for Texas Eastern Nuclear, a subsidiary of Texas Eastern Company and that the Modrall firm represents Transwestern Pipeline Company, another subsidiary of Texas Eastern Company. Finally it is claimed that there was evident partiality in that Dr. Mommsen was being considered as an arbitrator in a case involving Homestake Mining Company, which company is represented by the Modrall firm.

The District Court then found:

The United States Supreme Court has stated that the arbitration process is sub-

ject to the "simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 149, [89 S.Ct. 337, 339, 21 L.Ed.2d 301] (1968). This has been found to be a per se rule in that failure to disclose non-trivial relationships with parties will be grounds for vacating an arbitration award regardless of any actual bias, prejudice, unfairness or lack of the same in the hearing. In this case it is perfectly clear that Dr. Mommsen fully complied with his obligation under *Commonwealth Coatings, supra*, and all rules of the AAA.

April 1, 1980, Memo Opinion at pp. 7–8. The District Court reached a similar conclusion in its May 15, 1980 opinion after Mark Thompson, a partner in the Modrall firm submitted an affidavit, in which he acknowledged, *inter alia*, that he had attended a lecture which Mommsen had given for General Atomic and had become aware that Mommsen had been selected as the neutral arbitrator in the course of a conversation with an associate of the Modrall firm. We hold that the District Court properly found that the Graces did not establish evident partiality.

As discussed, *supra*, only clear evidence of impropriety justifies the denial of summary confirmation of arbitration awards. *National Bulk Carriers v. Princess Management, supra*. In order to set an award aside, the evidence of bias or interest of an arbitrator must be direct and definite and capable of demonstration. *Tamari v. Bache Halsey Stuart, Inc., supra*.

As the District Court observed, the Supreme Court in *Commonwealth Coatings Corp. v. Continental Casualty Co., supra*, delineated the disclosure requirements of potential arbitrators:

> . . . Since in the case of courts this is a *constitutional* principle, we can see no basis for refusing to find the same concept in the broad statutory language that governs arbitration proceedings and provides that an award can be set aside on

the basis of "evident partiality" or the use of "undue means." See also *Rogers v. Schering Corp.*, 165 F.Supp. 295, 301 (D.C.N.J.1958). It is true that arbitrators cannot sever all their ties with the business world, since they are not expected to get all their income from their work deciding cases, but we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias.

393 U.S. at pp. 148–149, 89 S.Ct. at p. 339.

The nondisclosure complained of by the Graces does not fall within the impartiality commands of *Commonwealth, supra*. The core of their complaint is that Mommsen and the Modrall firm had similar clients. The Graces would apparently request that potential neutral arbitrators "sever all their ties with the business world". Such is not the law. As Justice White observed in concurring with the majority in *Commonwealth, supra* :

> While I am glad to join my Brother BLACK'S opinion in this case, I desire to make these additional remarks. The Court does not decide today that arbitrators are to be held to the standards of judicial decorum of Article III judges, or indeed of any judges. It is often because they are men of affairs, not apart from but of the marketplace, that they are effective in their adjudicatory function. Cf. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 [80 S.Ct. 1347, 4 L.Ed.2d 1409] (1960). This does not mean the judiciary must overlook outright chicanery in giving effect to their awards; that would be an abdication of our responsibility. But it does mean that arbitrators are not automatically disqualified by a business relationship with the parties before them if both

parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial. I see no reason automatically to disqualify the best informed and most capable potential arbitrators.

\* \* \* \* \* \*

... This end is best served by establishing an atmosphere of frankness at the outset, through disclosure by the arbitrator of any financial transactions which he has had or is negotiating with either of the parties.... The judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality. That role is best consigned to the parties, who are the architects of their own arbitration process, and are far better informed of the prevailing ethical standards and reputations within their business.

393 U.S. at pp. 150–151, 89 S.Ct. at p. 340. Mommsen was not financially involved with either the Graces or Santa Fe. The fact that he and the Modrall firm had similar clients is of no moment herein, particularly in view of his disclosure that he had engaged in consulting work for General Atomic.

### IV.

The Graces contend the District Court should have granted an evidentiary hearing on matters relating to the conduct of the arbitration proceeding which were outside the arbitration record. This contention reiterates the alleged potential prejudicial relationship between Mommsen and the Modrall firm *vis-a-vis* clients common to both and further incorporates the alleged exclusion of Michael's arbitrator, George Cutler, from the decision making process.

In addressing this allegation, the District Court found:

The second ground for vacating the arbitration award urged by Michael Grace is his contention that the arbitrator chosen by him, Mr. George Cutler, was denied an opportunity to fully participate in the decision making process. In support of this claim, Michael Grace has submitted the affidavit of Mr. Cutler which states that he was

affectively [sic] denied a right to expect that all arbitrators would participate in the determination of the award as the arbitrator selected by the claimant was not given a sufficient opportunity to express his views, argument and reasoning behind his opinion and beliefs with respect to the merits of the claimant's position.

He claims that when he arrived at the final meeting of the arbitrators in San Francisco, Dr. Mommsen immediately stated his decision, which was favorable to the Santa Fe Pacific, and that this was then immediately concurred in by Mr. Jennings, the arbitrator chosen by the railroad. At this point, Cutler states that he felt "the decision-making process was, for all intents and purposes, concluded" and that he did not have a chance to express his views. Though the Santa Fe Pacific has filed an affidavit from Mr. Jennings controverting these allegations, the Court will assume, for the purposes of resolving this issue, that Mr. Cutler's affidavit is true. Even in this situation the Court concludes however that there was no misconduct warranting vacating of the arbitration award.

In the case of *Artie Shaw Presents, Inc. v. Snyder,* [46 A.D.2d 867] 362 N.Y. S.2d 158 (1974), a strikingly similar claim was made by the arbitrator chosen by the losing party. There it was alleged in a conclusory affidavit from the disgruntled arbitrator that he was "deprived of any meaningful opportunity to deliberate upon the issues with [his] co-arbitrators." 362 N.Y.S.2d at 159. There was no evidence in that case, as there is none in this case, that any arbitrator was excluded from any proceedings by the others or that all were not present for the taking of the evidence. The only exclusion of the complaining arbitrator in *Artie Shaw, supra,* was due to his own refusal to discuss the case with the other two arbitrators on the telephone. The New York court concluded that

... although it is desirable to have all of the arbitrators meet, following final

submission of the controversy and participate in the deliberations so that the parties to the dispute may have the benefit of the effect the views and arguments of each arbitrator might have upon the others, the presence of all is not required.

362 N.Y.S.2d at 159.

There is no evidence in this case that any meetings or consultation were had in secret, intentionally excluding Mr. Cutler, as was the situation in *Jones v. Bishop*, 218 Ill.App. 318 (1920), relied upon by Michael Grace. Nor is there any misconduct such as in *Blin v. Hay*, 2 Tyler [Vt.] 304 (1803), where two of the arbitrators were not notified of the meeting, let alone present. The Court can find no grounds for setting aside the arbitration award on this issue.

April 1, 1980 Memo Opinion at pp. 11–12.

We hold the District Court did not err in refusing to grant an evidentiary hearing. As set forth, *supra*, we are not entitled to judge an arbitration award independently. *Campo Machining Co., Inc., supra.* The finality of arbitration weighs heavily in its favor and cannot be upset absent exceptional circumstances. *Fizer v. Safeway Stores, Inc., supra.* The Graces' contention simply fails to establish exceptional circumstances warranting the vacation of the award upon the refusal of the District Court to hold an evidentiary hearing.

## V.

In No. 81–1161 Michael contends that the District Court erred in prohibiting him from proceeding with his California arbitration request.

As set forth, *supra*, within his request Michael sought the amount due him for work performed and for damages not yet computed, a determination of the duties owed by Santa Fe and the neutral arbitrator, and a determination of whether a breach of such duties occurred and their effect on the prior arbitration. Within its motion to stay Michael's arbitration request, Santa Fe argued that an arbitration proceeding on the same request had already been concluded, that the arbitration award entered was res judicata as to Michael's California arbitration demand, and that the court had jurisdiction to stay the arbitration request in aid of the appeal of the judgment on the order affirming the arbitration award pending before this Court.

In its order granting Santa Fe's motion to stay Michael's California arbitration request, the District Court simply observed that it was staying the request in aid of jurisdiction on the appeal and to preserve the status quo pending that appeal.

The District Court clearly had jurisdiction over Michael to decide matters in aid of the appeal from its judgment. In *Silverthorne v. Laird*, 460 F.2d 1175 (5th Cir. 1972) the court held:

In short, we subscribe to the following analysis of the rule against district court activity subsequent to the taking of an appeal:

"In general, the district court should have full authority to take any steps during the pendency of the appeal that will assist the court of appeals in the determination of the appeal. Restrictions on the power of the district court that are grounded in nothing more than the technical consideration that jurisdiction 'passes' from it upon the filing of the notice of appeal are impractical and unwise. Dictum in *Philadelphia Marine Trade Ass'n v. International Longshoremen's Ass'n* (CA3d, 1966) 365 F.2d 295, rev'd. on other grounds (1967) 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236, to the effect that the filing of a notice of appeal on the day judgment was entered and before the trial court had entered findings of fact and conclusions of law precluded the court from entering such findings is an example of a technical application of the general rule which serves no useful purpose."

9 Moore's Federal Practice ¶ 203.11 n. 2.

460 F.2d at pp. 1178–1179.

The same standard is applicable here.

Even were we to assume, which we do not, that the District Court did, in fact, as

Michael contends, lack jurisdiction to enter the order, the general law of arbitration would, in and of itself, preclude Michael from going forward with the California arbitration request. As discussed, *supra*, the finality of arbitration weighs heavily in its favor. *Fizer, supra.* Courts are not empowered to judge an arbitration independently. *Campo Machining Co. Inc., supra.* Perhaps more importantly, however, is the rule that the right to arbitration, like any other contract right, can be waived. *Reid Burton Construction, Inc., supra.* In *Reid Burton* we observed:

> However, the right to arbitration, like any other contract right, can be waived. *Cornell & Company v. Barber & Ross Company*, 123 U.S.App.D.C. 378, 360 F.2d 512, 513 (D.C.Cir.), *aff'g.* 242 F.Supp. 825 (D.D.C.). There is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts of each case and usually calls for a finding by the trier of the facts. *Burton-Dixie Corp. v. Timothy McCarthy Const. Co.*, 436 F.2d 405, 408 (5th Cir.).

614 F.2d at p. 702.

Recognizing that there "is no set rule" as to what constitutes a waiver of one's arbitration rights, we hold that Michael's right to arbitrate those requests set forth within his California arbitration demand, were waived to the extent that they were not addressed in the course of the first arbitration proceeding, by virtue of Michael's failure to advance such requests. In the final analysis, Michael's California arbitration request appears "to be yet one more attempt" to circumvent "the consequences of an arbitration" upon which he so vigorously insisted.

### VI.

We have carefully considered the remaining allegations of error. We hold that they are, individually and collectively, without merit.

WE AFFIRM.

SEYMOUR, Circuit Judge, concurs in the result.